CASE NO. 3:21-00261-L

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

HIGHLAND CAPITAL MANAGEMENT LP

(Debtor)

THE DUGABOY INVESTMENT TRUST AND
GET GOOD NONEXEMPT TRUST

(Appellants)

v.

HIGHLAND CAPITAL MANAGEMENT LP

(Appellee)

Adversary proceeding on appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

**REPLY BRIEF FILED ON BEHALF OF
THE DUGABOY INVESTMENT TRUST AND THE GET GOOD NONEXEMPT TRUST**

Filed by Heller, Draper & Horn, LLC
Douglas S. Draper
Leslie A. Collins
Michael E. Landis
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3300
Email: ddraper@hellerdraper.com
Email: lcollins@hellerdraper.com
Email: mlandis@hellerdraper.com

{00375986-3}

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I     INTRODUCTION/OVERVIEW ............................................................................... 1

II.    Error! Reference source not found. ................................................................................ 3

III.   **SECTION 510 PROVIDES A STONG DEFENSE TO THE HARBOURVEST CLAIMS AND WAS IGNORED BY THE BANKRUPTCY COURT** ................................................................................................ 4

IV.   **CONCLUSION** ........................................................................................................ 8

## **TABLE OF AUTHORITIES**

**CASES**

*In re Age Ref., Inc.*,
    801 F.3d 530 (5th Cir. 2015) ........................................................................................1

*DeepRock Venture Partners LP v. Beach*,
    No. 3:16-CV-1552-M, 2017 WL 1293090 (N.D. Tex. Apr. 4, 2017) ...........................3

*In re Geneva Steel Co.*,
    281 F.3d 1173 (10th Cir. 2002) ....................................................................................7

*In re Granite Partners, L.P.*,
    208 B.R. 332 (Bankr. S.D.N.Y. 1997) ..........................................................................7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ......................................................................................................2

*In re Telegroup, Inc.*,
    281 F.3d 133 (3d Cir. 2002) .........................................................................................6

*Templeton v. O'Cheskey (In re American Housing Foundation)*,
    785 F.3d 143 (5th Cir. 2015) ....................................................................................5, 6

**STATUTES AND RULES**

11 U.S.C. § 363 ......................................................................................................................4

11 U.S.C. § 510 .............................................................................................................. *passim*

I.      INTRODUCTION/OVERVIEW

The Dugaboy Investment Trust and the Get Good Nonexempt Trust (the "Appellants") file this Reply Brief for the limited purpose of addressing certain errors, omissions, and mischaracterizations that are stated in the *Answering Brief of Appellee Highland Capital Management, L.P.* (the "Appellee Brief").  First, the Highland Capital Management, L.P.'s ("Appellee" or "Debtor") statement of the standard of review is a distinction without a difference.  While this Court is tasked with reviewing the Bankruptcy Court's Order for an abuse of discretion, that review is centered on whether the Bankruptcy Court abused its discretion in its determination that the proposed settlement with the HarbourVest Claimants is fair, reasonable, and in the best interest of the estate, as the Appellee itself states in the Appellee Brief.  *See,* Appellee Brief at p. 26, ROA, p. 4015 ("A bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate." citing *In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).).  While the Bankruptcy Court used its discretion in making this determination, the underlying standard for approving a settlement by the estate is nonetheless the same.

Second, the Appellee focuses primarily on what HarbourVest is receiving in the settlement.  However, the Appellee discounts the actual claim amount permitted to HarbourVest in the settlement and, in doing so, ignores the insufficient (if any) benefit to the estate.  The Appellee claims that the estate is receiving the benefit of HarbourVest's interest in Highland CLO Funding, Ltd. ("HCLOF"), which is being returned by HarbourVest.  The Debtor and HarbourVest both value the HCLOF interest at approximately $22.5 million, but, as pointed out in the Appellant's Original Brief, fail to provide the basis or methodology for arriving at that value.  Notwithstanding the lack of a foundation for the $22.5 million value, the Appellee claims

simultaneously that the estate is receiving the benefit of the HCLOF interest *and* that the interest is going to a wholly owned subsidiary of the Reorganized Debtor. There are two problems with this analysis. One is that the plain language of the settlement agreement does not say that the HCLOF interest is going to a wholly owned subsidiary. Rather, it states that HarbourVest will transfer the interest in HCLOF to "the Debtor *or its nominee*."[1] There is no specification or limitation on who the Debtor's "nominee" can be. While Mr. Seery stated that he meant for the HCLOF interest to go to a wholly owned subsidiary of the Reorganized Debtor, that is not what the plain language of the settlement agreement approved by the Bankruptcy Court says. The second problem is that even if the HCLOF interest goes to a wholly owned subsidiary, that is not a benefit *to the estate*. While the Debtor/Reorganized Debtor's ownership interest in a subsidiary may be property of the estate, the assets of that subsidiary are not. As such, the HCLO interest will not be available for distribution to the creditors and provides no benefit to the estate.

Third, the Appellee Brief dismisses Appellants' point that the Bankruptcy Court ignored the assertion that the HarbourVest claims should have been subordinated under 11 U.S.C. § 510(b) on the grounds that there was no ruling on that specific issue. Section 510 is a defense to the HarbourVest claims, which should have been considered by the Bankruptcy Court in weighing the "probabilities of ultimate success should the claim be litigated,"[2] but was not. Consideration of a key defense to the HarbourVest claims (which was raised at the hearing) is a necessary factor to consider when determining whether a settlement is fair, reasonable, and in the best interest of the estate.

---

[1] ROA, Vol. 1, p. 15 (emphasis added).

[2] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

Lastly, the Appellee Brief never addresses the proverbial elephant in the room which is that the Debtor's position as to the merits of HarbourVest's claims did a 180° flip over thirty days. Seemingly overnight, the Debtor went from having the position that it "intends to vigorously defend the HarbourVest Claims on various grounds"[3] to granting HarbourVest $80 million in claims against the estate while the value given up by HarbourVest (the HCLOF interest) ends up outside of the estate and is of no benefit to the creditors.

## II. THERE IS INADEQUATE ATTENTION GIVEN TO THE SETTLEMENT FROM THE ESTATE'S PERSPECTIVE

The Debtor devotes much time to assert that HarbourVest's actual compensation under the settlement is only $16.8 million. It arrives at this number by estimating an 87.44% payout to unsecured creditors. With the $45 million class 8 claim awarded to HarbourVest under the settlement, that results in a $39.3 million payout, which when reduced by the claimed $22.5 million interest in HCLOF, results in a final amount of $16.8 million. The issue with this argument is that it confuses the actual standard for determining whether a proposed settlement should be approved. The standard is not whether the non-debtor settling party is taking a significant amount of a reduction in its asserted claim; rather, the standard is whether the settlement is in "the best interests of *the creditors*." *DeepRock Venture Partners LP v. Beach*, No. 3:16-CV-1552-M, 2017 WL 1293090, at *4 (N.D. Tex. Apr. 4, 2017), *aff'd sub nom. Matter of Beach*, 731 F. App'x 322 (5th Cir. 2018) (emphasis added). In this case, the $22.5 million that the HCLOF interests are allegedly valued at does not go to the estate for distribution to the creditors. Rather, as asserted by Mr. Seery in his testimony, the HCLOF interest is going to a non-debtor party. Because the HCLOF interest will not be property of the estate, but of a non-debtor entity, it will not be available for distribution to creditors and provides no value to the

---

[3] ROA, Vol. 13, pp. 2958–59.

estate or its creditors. It makes no difference whether the $22.5 million HCLOF interest goes to a wholly owned debtor subsidiary or to some other "nominee" as provided for in the settlement agreement. In either case, the benefit to the estate is $0.

Additionally, while placing the HCLOF interests in a wholly owned subsidiary can arguably be said to provide some value to the estate through the estate's ownership in the special purpose vehicle, the protections afforded to creditors through the Bankruptcy Court and the bankruptcy process in the form of court oversight on things such as sales of assets through approved bid procedures and other such protections provided through 11 U.S.C. § 363 are removed which allows the assets to be sold without court supervision. The removal of such protections greatly increases the possibility of harm to the creditors should the HCLOF interests be resold at less than fair value.

The Appellee Reply is further misguided in that regardless of what the Debtor asserts is the "likely" payout to HarbourVest, the reality is that HarbourVest is receiving a $45 million class 8 claim and a $35 million class 9 subordinated claim for a potential recovery of up to $80 million (however likely it may be). This potential $80 million payout to HarbourVest is far in excess of the $57.5 million recovery that HarbourVest is likely to receive through litigation in the best of scenarios. As was conceded in Mr. Seery's testimony, the treble damages sought through HarbourVest's RICO claim was unlikely to have success. Without the RICO claim, HarbourVest's actual claim is limited to a $50 million loss on the initial HCLOF investment plus the $7.5 million in legal fees for a total claim of $57.5 million. Even in the event that HarbourVest does not receive a full payout and only receives the $39.3 million for its class 8 general unsecured claim, the estate is still receiving, at most, a $18.2 million reduction on HarbourVest's claims. Given the arguments previously asserted by Appellants in their Original

Brief regarding the defenses available to the Debtor (including the subordination of HarbourVest's entire claim under 11 U.S.C. § 510(b) and the failure of due diligence on the part of HarbourVest), this is not a significant benefit to the estate.

### III. SECTION 510 PROVIDES A STONG DEFENSE TO THE HARBOURVEST CLAIMS AND WAS IGNORED BY THE BANKRUPTCY COURT

While the Debtor claims that the HarbourVest claims are tort claims and therefore not subject to section 510 of the Bankruptcy Code, it glosses over the point that the claims are tort claims *that arose out of the purchase of securities*. Regardless of whether the estate would ultimately prove successful in subordinating the HarbourVest claims under section 510, the point is that it was not considered. When determining the probabilities of ultimate success should the claim be litigated, all defenses should be considered.

Furthermore, to directly address the Debtor's claim that HarbourVest's claims are exempted from section 510(b)'s automatic subordination because they are based on fraud, such an argument has been universally rejected. *Templeton v. O'Cheskey (In re American Housing Foundation)*, 785 F.3d 143 (5th Cir. 2015), involved similar complexity as the present case involving numerous affiliated entities, all of which were related to a single principal. In *American Housing*, the principal entity, American Housing Foundation ("AHF"), created numerous limited partnerships to fund certain developments and solicited investors in these LPs to act as limited partners. One of those investors, Templeton, alleged that he was induced to invest in several of the LPs by the guaranty by AHF of repayment. What was further revealed through the bankruptcy was that the principal of AHF had been fraudulently diverting the investments in the LPs to his own benefit for years, ultimately resulting in his tragic suicide and bankruptcy of AHF. Templeton filed a liquidated unsecured claim for his investments and an unliquidated unsecured claim relate to the fraud perpetrated upon him by the deceased principal.

{00375986-3} 5

The bankruptcy court ordered all of Templeton's claims subordinated pursuant to section 510(b). *Id.* at 151. The district court affirmed. *Id.*

The Fifth Circuit held that although Templeton was asserting claims based on tort theories, they still constitute "damages" under 510(b). "With respect to the 'unliquidated claims'—i.e., those for fraud, breach of fiduciary duties, and money-had-and-received—Templeton clearly seeks damages for injuries resulting from these torts." *Id.* at 153. The court then went on to hold that the damages Templeton sought arose from the "purchase or sale of a security." "For a claim to 'arise from' the purchase or sale of a security, there must be some nexus or causal relationship between the claim and the sale." *Id.* at 155, quoting *SeaQuest Diving, LP v. S & J Diving, Inc. (In re SeaQuest Diving, LP)*, 579 F.3d 411, 421 (5th Cir.2009). The court also noted that the fact that Templeton purchased interests in affiliates of the debtor and not the debtor itself was inconsequential because "Section 510(b) applies whether the securities were issued by the debtor *or by an affiliate of the debtor.*" *Id.* at 153, quoting Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 510.04 [04] (16th ed. 2014) (emphasis in original).

Just as the Fifth Circuit found that Templeton's purchase of the interests in the LPs had a nexus to his claims, HarbourVest's purchase of the HCLOF interests has a clear nexus to HarbourVest's claims despite the fact that the claims are based in tort. Similarly, the statement that HarbourVest's HCLOF interests "do not represent any claim or interest in the Debtor" is without consequence given that section 510(b) applies to affiliates of the debtor in equal force as to the debtor.

Other courts have held similarly. *In re Telegroup, Inc.*, 281 F.3d 133, 142 (3d Cir. 2002) ("Congress enacted § 510(b) to prevent disappointed shareholders from recovering their

investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding. Nothing in this rationale would distinguish those shareholder claims predicated on post-issuance conduct from those shareholder claims predicated on conduct that occurred during the issuance itself."); *In re Geneva Steel Co.*, 281 F.3d 1173, 1182–83 (10th Cir. 2002) ("For more than two decades, courts have looked skeptically at any effort by an investor in a bankrupt entity to refashion himself or herself into a general creditor. This case is no different. Allen accepted a different and higher risk of insolvency than did the general creditors. In subordinating his claim, we do not suggest it lacks merit (though we note that Geneva denies committing any fraud); we instead refuse to treat it as a general unsecured claim."); *In re Granite Partners, L.P.*, 208 B.R. 332, 344 (Bankr. S.D.N.Y. 1997) (holding that claims of waste and breach of fiduciary duty were nonetheless subordinated as they arose out of a creditor's investment in the debtor and that to hold otherwise would violate the absolute priority rule.). These cases all recognize the fundamental bankruptcy principal that investors are not treated the same as general unsecured creditors because they accept a higher level of risk in return for a higher potential return. The fact that HarbourVest's claims are based in tort does not separate those claims from arising out of the purchase or sale of securities regardless of the merits of those claims.

What all of these cases show is that there is a high likelihood that HarbourVest's *entire* claim would be subordinated under 11 U.S.C. § 510(b), a defense that was never properly considered by the Bankruptcy Court and which shows an abuse of discretion by the Bankruptcy Court.

## IV. CONCLUSION

Given the Debtor's almost overnight change in opinion from the HarbourVest claims having no merit and vowing to "vigorously defend" against the claims to granting it a potential $80 million return, the fact that strong defenses were brushed aside, and the fact that the return of the HCLOF interests are permitted to go outside of the estate (and outside the reach of creditors), Appellants assert that the Bankruptcy Court abused its discretion in approving the settlement. The settlement dilutes the general unsecured creditor pool with a $45 million HarbourVest claim that should be subordinated under section 510 and adds no value to the estate itself.

As such, the Appellants respectfully request that this Court overturn the Bankruptcy Court's Order and hold that:

a) The Bankruptcy Court abused its discretion by granting the Debtor's Motion For Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith [ROA Vol. 1, p. 348] (the "9019 Motion") and finding that the 9019 Motion was in the best interest of the Debtor's estate, its creditors and other parties in interest;

b) The Bankruptcy Court abused its discretion by granting the 9019 Motion and approving the settlement agreement was fair and equitable; and

c) The Bankruptcy Court abused its discretion by approving the settlement wherein the Debtor acquired assets from the settling party and pursuant to Bankruptcy Court authorization could place the assets to be acquired with Debtor funds outside of the estate.

Dated June 28, 2021:

> */s/Douglas S. Draper*
> Douglas S. Draper, La. Bar No. 5073
> ddraper@hellerdraper.com
> Leslie A. Collins, La. Bar No. 14891
> lcollins@hellerdraper.com
> Michael E. Landis, La. Bar No. 36542
> mlandis@hellerdraper.com

        Heller, Draper & Horn, L.L.C.
        650 Poydras Street, Suite 2500
        New Orleans, LA  70130
        Telephone: (504) 299-3300
        Fax: (504) 299-3399
        *Attorneys for Appellants*
        *The Dugaboy Investment Trust and*
        *The Get Good Nonexempt Trust*